# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**WILLIAM E. HEDGES,**

        **Plaintiff,**

           **Case No. 2:16-cv-592**
      **v.**           **JUDGE GEORGE C. SMITH**
           **Chief Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, William E. Hedges, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for social security disability insurance benefits.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 9) ("SOE"), the Commissioner's Memorandum in Opposition (ECF No. 12), Plaintiff's Reply (ECF No. 13), and the administrative record (ECF No. 8).  For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** the SOE and **AFFIRM** the Commissioner's nondisability finding.

## I.    BACKGROUND

Plaintiff filed his application for benefits on September 10, 2010, alleging that he has been disabled since February 22, 2008, due to a back injury, protruding disc, bulging disc, fluid sacs around discs, lumbosacral spondylosis, lumbosacral sprain, lumbar sprain, thoracic sprain, neck sprain, herniated disc, facet arthropathy, arthritis, and depression.  (R. at 289–90, 321.) Plaintiff's application was denied initially and upon reconsideration.  Plaintiff sought a *de novo*

hearing before an administrative law judge. Administrative Law Judge Timothy Keller ("ALJ") held a hearing on February 2, 2012, at which Plaintiff, who was not represented by counsel, appeared and testified. (R. at 94–108.) On March 16, 2012, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 133–42.) On June 19, 2013, the Appeals Council granted Plaintiff's request for a review and remanded his claim back to the ALJ. (R. at 148–51.)

The ALJ held another hearing on December 11, 2014, at which Plaintiff, who was not represented by counsel, appeared and testified. (R. at 38–46.) On December 31, 2014, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 13–28.) On April 29, 2016, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1–3.) Plaintiff then timely commenced the instant action.

## II.    HEARING TESTIMONY[1]

### A.    Plaintiff's Testimony

Plaintiff testified at the administrative hearing on February 2, 2012, that he attends his son's football games and drives to the away games. (R. at 107.) Plaintiff also testified at the December 11, 2014, administrative hearing that he continues to see his treating psychologist, Alethea Baker, Ph.D., every week. (R. at 44.)

### B.    Vocational Expert Testimony

Bruce Growick testified as a vocational expert ("VE") at the February 2, 2012, administrative hearing. (R. at 108–10.) The VE classified Plaintiff's past relevant work as a

---

[1] The Court limits its analysis of the evidence and the administrative decision to the issues raised in the SOE, *i.e.*, that the ALJ improperly determined there were no severe mental health impairments and that the ALJ violated the treating physician rule.

construction superintendent as follows:  light, low-skilled work; being on his feet for at least six hours during an eight-hour work day.  (R. at 109.)  The ALJ proposed a hypothetical that presumed Plaintiff was capable of lifting and carrying, pushing, pulling 20 pounds occasionally and 10 pounds frequently; able to sit, stand, and walk for six hours each, out of an eight-hour work day; limited to only occasional climbing of ladder, rope, or scaffold and only occasional stooping, crouching, or crawling.  (*Id*.)  The VE testified that nothing in that hypothetical precluded Plaintiff from performing his past relevant work.  (*Id*.)

Carl Hartung testified as a VE at the administrative hearing on December 11, 2014.  (R. 46–48.)  The VE classified Plaintiff's past relevant work as a construction superintendent as light work.  (R. at 47.)  The ALJ proposed a hypothetical that presumed the same limitations as those identified during the hearing on February 2, 2012.  (*Id*.)  The VE testified that Plaintiff's previous job is still available based on that hypothetical.  (*Id*.)  The VE further testified that, presuming the same restrictions, Plaintiff could also perform such light, unskilled jobs as marker (approximately 271,554 such jobs in the national economy); labeler (approximately 26,509 such jobs in the national economy); and buffing machine tender (approximately 4,479 such jobs in the national economy).  (*Id*.)  The VE testified that his testimony does not conflict with the Dictionary of Occupational Titles ("DOT").  (*Id*.)

### III.    MEDICAL RECORDS

**A.    Alethea Baker, Ph.D.**

On June 4, 2010, Alethea Baker, Ph.D. performed a psychological assessment of Plaintiff at the request of his Ohio Bureau of Workers' Compensation ("BWC") attorney.  (R. at 595–98,

988.)[2]  During the mental status evaluation, Dr. Baker reported that Plaintiff appeared neat and that he was friendly and appropriate.  (R. at 597.)  Plaintiff was able to communicate on a receptive and expressive level and his thought processes were logical, cohesive and goal directed.  (*Id*.)  Dr. Baker noted that Plaintiff's affect was blunted and flat with frequent tearfulness.  (*Id*.)  Plaintiff reported suicidal thoughts (without intent) and that he cries about twice a day.  (*Id*.)  Plaintiff also reported several correlates of depression, including daily sad mood, fatigue, significant sleep impairment, diminished libido, difficulty concentrating, feelings of worthlessness, helplessness, suicidal thoughts, and social isolation. (*Id*.)  Dr. Baker further noted that Plaintiff was alert and oriented times four and that he appeared to be functioning at the average range.  (*Id*.)  Plaintiff's memory appeared to be intact and his concentration was variable.  (*Id*.)  While Plaintiff could count backwards from 100 by seven, he did so very slowly and made mistakes.  (*Id.*)  Plaintiff named the current U.S. President, and three previous presidents in the correct order and was able to identify one historic event and one historic person. (*Id*.)  A test, the Battery for Health Improvement 2 ("BHI-2"), was self-administered and the results were deemed to be valid.  (*Id*.)  Many of these results correlated with depression and some results correlated with anxiety.  (R. at 597–98.)  Based upon the results of her "examination and the information provided and reviewed," Dr. Baker concluded that Plaintiff was experiencing psychopathology and diagnosed him with major depressive disorder and an anxiety disorder.  (R. at 598.)  In so concluding, Dr. Baker noted that since his work-related injury in 1999, Plaintiff "has not been able to continue his usual vocational activities, and feels a near complete loss of effectiveness in his vocational activities."  (*Id*.)

---

[2] Plaintiff suffered a work-related injury on June 8, 1999, when working as a construction superintendent.  (R. at 595.)

4

On September 17, 2010, Dr. Baker reaffirmed her conclusion that Plaintiff suffered from both disorders.  (R. at 640–43.)[3]  Dr. Baker's conclusion in this regard was based on Plaintiff's self-reports, his presentation during the clinical interview, and objective testing.  (R. at 643.)

Once the BWC allowed Plaintiff's claim for treatment for depression and anxiety, Plaintiff began cognitive-behavioral treatment with Dr. Baker on April 1, 2011.  (R. at 988.)  In an evaluation dated December 5, 2011, Dr. Baker reported that she had conducted thirty sessions with Plaintiff, with the most recent on November 30, 2011.  (R. at 956.)  Dr. Baker noted that while Plaintiff had improved, he continued to experience correlates of depression and anxiety.  (*Id*.)  Dr. Baker recommended continued weekly sessions for six months.  (*Id*.)

Dr. Baker reported on June 11, 2012, that she observed Plaintiff smiling and talkative more often than in previous sessions.  (R. at 977.)  Despite improvements, however, Plaintiff experienced continued correlates of depression and anxiety.  (*Id*.)  Dr. Baker again recommended weekly sessions for six months.  (*Id*.)

Dr. Baker noted in July 2013, that Plaintiff experienced ongoing feelings of loss and grief regarding his inability to work.  (R. at 999.)  She did not recommend that he return to work because it would likely worsen Plaintiff's condition.  (*Id*.)

On September 9, 2013, Dr. Baker reported that Plaintiff's psychological conditions have improved since April 1, 2011, but also noted that her clinical observations and his self-reports revealed that Plaintiff continued to experience depression and anxiety.  (R. at 967.)  Dr. Baker went on to conclude that Plaintiff was permanently and totally disabled because of his psychological conditions and that he was not capable of returning to his former position of employment, or able to sustain any form of gainful employment.  (R. at 968.)

---

[3] Dr. Baker's report in this regard was prepared as rebuttal to the August 26, 2010, report of Lee Howard, Ph.D., discussed below.

Dr. Baker noted on February 7, 2014, that Plaintiff had experienced a slightly improved mood recently, but continued to experience depression and anxiety at times. (R. at 997.) Dr. Baker opined that Plaintiff would not be likely to withstand the stress associated with a return to work and did not recommend such effort because it would likely worsen Plaintiff's condition. (*Id*.) She reported similar findings in July and September 2014. (R. at 998–99.) On July 16, 2014, Dr. Baker added that Plaintiff sometimes becomes tearful when speaking of his symptoms of depression and anxiety. (R. at 1024.)

**B.     Darrell Snyder, Ph.D.**

Darrell Snyder, Ph.D., a state agency psychologist at the initial consideration level whose assessment was based on the period February 22, 2008, to August 30, 2010, found only mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace and no episodes of decompensation. (R. at 629.) Dr. Snyder gave only "partial weight" to Plaintiff's statements, which appeared to be exaggerated. (R. at 631.) Dr. Snyder concluded that Plaintiff did not have a severe mental impairment and therefore mental limitations in a work setting would not be severe. (R. at 621, 631.)

**C.     Lari Meyer, Ph.D.**

During an evaluation on August 20, 2010, Lari Meyer, Ph.D., described Plaintiff as mildly dramatic. (R. at 611.) Dr. Meyer noted that Plaintiff's eye contact was appropriate but that Plaintiff tended to avoid eye contact when describing his psychological or psychiatric symptoms. (*Id*.) Plaintiff cried intermittently throughout the examination and reported explosive outbursts in public. (R. at 612.) Plaintiff reported socializing every day with his family and every once in a while with others. (R. at 610.) Dr. Meyer noted that Plaintiff reported concerns with his ability to remember and concentration, but concluded that these problems were not

evidenced in the mental status testing.  (R. at 612, 615.)  In addressing work-related mental

abilities, Dr. Meyer found that Plaintiff was not impaired in his ability to understand, remember,

and follow direction.  (R. at 617.)  If a task was simple, Dr. Meyer found no impairment in

Plaintiff's ability to maintain attention, concentration, persistence, and pace to perform routine

tasks, and only mild impairment if the task is more complex.  (*Id*.)  Dr. Meyer found mild

impairments in Plaintiff's ability to relate to others and his ability to withstand stress and

pressures associated with day-to-day work activity.  (R. at 617–18.)

**D.    Lee Howard, Ph.D.**

Lee Howard, Ph.D., conducted a psychological evaluation, which included an in-person

meeting, of Plaintiff on August 26, 2010.  (R. at 930–45.)  Dr. Howard noted that Plaintiff

reported crying spells once per week.  (R. at 938.)  Plaintiff reported suicidal ideation the day

before the exam, but denied any current or imminent intent and denied homicidal ideation.  (*Id*.)

Dr. Howard further noted that Plaintiff reported some unipolar depression every three to four

weeks for a day over the last seven to eight months during which he will lay around and mope

but feel better the next day.  (*Id.*)  Dr. Howard concluded that Plaintiff

> is not reporting, measuring, and/or demonstrating symptoms consistent with either
> major depression, single episode, or anxiety disorder n.o.s.  He does not meet the
> DSM-IV frequency requirements for these diagnoses per his self-report, he does
> not manifest classic symptoms of such on clinical observation, and all
> psychometric test results are positive for some form of symptom
> magnification/malingering/accentuation as opposed to true psychopathology.

(R. at 943.)

**E.    Donald S. Scott, Ph.D.**

Scott S. Donald, Ph.D., performed an in-person examination of Plaintiff on December 30,

2011, for BWC disability purposes.  (R. at 948.)  Dr. Donald noted that Plaintiff attended his

son's athletic activities.  (R. at 949.)  Dr. Donald reported that Plaintiff was alert, cooperative,

7

and maintained good eye contact during the examination. (R. at 952.) Dr. Donald also noted,

however, Plaintiff's depressed mood and sad affect with occasional anger. (*Id*.) Plaintiff

maintained good eye contact and was cooperative in the interview. (*Id*.) While Plaintiff's

immediate memory was good, his delayed memory was very poor. (*Id*.) Plaintiff's

concentration as measured by serial seven subtraction from 100 was good and his calculations

were accurate and at a fair speed. (*Id*.) His ability to abstract was in the normal range. (*Id*.) Dr.

Donald diagnosed Plaintiff with a major depressive disorder and generalized anxiety disorder.

(*Id*.) Dr. Donald reported that Plaintiff's depressive symptoms and functional abilities remained

unchanged in the last six months and assigned Plaintiff a Global Assessment of Functioning

("GAF") score of 52. (*Id*.)[4] Dr. Donald opined that Plaintiff could not return to his previously

employment because he would be unable to tolerate the day-to-day interaction with co-workers,

supervisees, and supervisors. (*Id*.) Dr. Donald further opined that Plaintiff would be unable to

meet the time and pace demands of his former workplace. (R. at 952–53.)

**F.     Rakesh Ranjan, M.D.**

Rakesh Ranjan, M.D., performed an independent medical evaluation of Plaintiff on June

11, 2014, for purposes of Plaintiff's worker's compensation claim. (R. at 1004–07.) Upon the

mental status examination, Dr. Ranjan noted that Plaintiff was alert and oriented. (R. at 1006.)

Dr. Ranjan further noted that Plaintiff was withdrawn, somewhat disheveled, with a despondent

and anxious mood. (*Id*.) Dr. Ranjan also noted a somewhat constricted affect, mild

psychomotor retardation, as well as erratic concentration and memory. (*Id*.) Dr. Ranjan opined

that Plaintiff could not return to his former employment because it had the potential to

---

[4] A GAF score of 52 reflects moderate symptoms. *Osborne v. Colvin*, No. 15-CV-2233, 2017
WL 874501, at *5 (N.D. Ohio Mar. 6, 2017) (citing *Diagnostic and Statistical Manual of Mental
Disorders* at 34 (American Psychiatric Ass'n, 4th ed., 2000)).

exacerbate his psychological symptoms.  (R. at 1006–07.)  Dr. Ranjan also opined, however, that

Plaintiff may be able to perform sedentary, low stress work.  (R. at 1007.)

**G.      Steven J. Meyer, Ph.D.**

On March 24, 2011, Steven J. Meyer, Ph.D., a state agency psychological consultant who

reviewed new evidence upon reconsideration, assessed Plaintiff's limitations, finding several

moderate limitations in areas requiring sustained concentration and persistence, social

interaction, and adaptation.  (R. at 895–97.)  Dr. Meyer opined that Plaintiff was capable of

simple and moderately complex routine work, within physical conditions, at a reasonable pace,

in setting with regular expectations, occasional intermittent interactions with others, and few

changes.  (R. at 897.)

## IV.      ADMINISTRATIVE DECISION

On December 31, 2014, the ALJ issued his decision.  (R. at 13–28.)  The ALJ found that

Plaintiff last met the insured status requirements of the Social Security Act through December

31, 2013.  (R. at 16.)  At step one of the sequential evaluation process,[5] the ALJ found that

Plaintiff had not engaged in substantially gainful activity during the period from his

---

[5] Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive
finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th
Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or
   equal the criteria of an impairment set forth in the Commissioner's Listing of
   Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant
   perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual
   functional capacity, can the claimant perform other work available in the national
   economy?

alleged onset date of February 22, 2008, through his date last insured ("DLI") of December 31, 2013.  (R. at 16.)

At step two, the ALJ determined that through the DLI, Plaintiff had the severe impairments of degenerative disc disease of the spine, obesity, right shoulder impingement, and injury to the right elbow post surgeries.  (*Id.*)  In connection with this finding, the ALJ explicitly concluded that Plaintiff did not have a medically determinable mental impairment through his DLI.  He offered the following analysis in support of this determination:

> The claimant's medically determinable mental impairment of an affective disorder did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and was therefore nonsevere.
>
> In making this finding, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1).  These four broad areas are known as the "paragraph B" criteria.

(*Id.*)  After describing mild limitations in the functional areas of activities of daily living, social functioning, and concentration, persistence and pace, the ALJ went on to consider Dr. Howard's assessment, concluding that Plaintiff's medically determinable mental impairment was nonsevere:

> The claimant had a comprehensive psychological evaluation and testing by Dr. Howard on August 26, 2010. After a review of the claimant's records (including the evaluation by Dr. Baker on June 10, 2010) and significant psychological testing, Dr. Howard opined, "In conclusion, the claimant is not reporting, measuring, and/or demonstrating symptoms consistent with either major depression, single episode, or anxiety disorder n.o.s. He does not meet the DSM-IV frequency requirements for these diagnoses per his self-report, he does not manifest classic symptoms of such on clinical observation, and all psychometric test results are positive for some form of symptom magnification/ malingering/ accentuation as opposed to true psychopathology" (Exhibit 34F). Dr. Baker submitted a rebuttal to this evaluation, which has been considered

---

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

and found to be unpersuasive as largely supported by the claimant's own
subjective report of symptoms from the June 10, 2010 initial evaluation, which
was less extensive than the evaluation by Dr. Howard. Dr. Baker was not
treating the claimant at this point as he did not return for treatment until April of
2011 (Exhibit 42F). The evidence reveals inconsistent reports of
symptomology to various medical sources, which further supports the testing
results that suggested the strong possibility of malingering or exaggeration and
the opinion of Dr. Howard at Exhibit 34F.

Because the claimant's medically determinable mental impairment caused no
more than "mild" limitation in any of the first three functional areas and "no"
episodes of decompensation which have been of extended duration in the fourth
area, it was nonsevere (20 CFR 404.1520a(d)(l)).

(R. at 18.)

The ALJ next found that through Plaintiff's DLI, he did not have an impairment or

combination of impairments that met or medically equaled one of the listed impairments

described in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically comparing his impairments

against Listings 1.02 (disorders of the lower extremities) and 1.04 (disorder of the spine).  (R. at

18–19.)  At step four of the sequential process, the ALJ set forth Plaintiff's residual functional

capacity ("RFC") as follows:

After careful consideration of the entire record, the undersigned finds that,
through the date last insured, the claimant had the residual functional capacity to
lift, carry, push and pull twenty pounds occasionally and ten pounds frequently,
and to sit, stand and walk for six hours each out of an eight hour day, except that
he can only occasionally climb ladders, ropes, and scaffolds, stoop, crouch, and
crawl.

(R. at 19.)

In assessing the foregoing RFC, the ALJ specifically noted that the case had been

remanded for new and material evidence.  (*Id.*)  Although he considered this new evidence, the

ALJ nevertheless found that no new evidence supported a finding different from Plaintiff's RFC

in the earlier decision.  (*Id.*)  In doing so, the ALJ went on to assign Dr. Baker's opinion "little"

weight, reasoning as follows:

11

The claimant's treating psychologist, Dr. Baker, has many opinions in the record, both in the old evidence and in the new evidence. However, these opinions were primarily made for purposes of continuing psychological treatment benefits pursuant to the claimant's workers' compensation claim, and the standard for disability under workers' compensation is different from the standard for social security disability. Furthermore, even where the doctor indicates that the claimant is disabled, this issue is reserved for the Commissioner. The undersigned has considered all these opinions, but notes that these opinions are largely based on the claimant's subjective reports of symptoms and limitations, which have been revealed by other evidence to be inconsistently reported and contradicted by other evaluations and testing. The contradictory reports of symptoms and contrary findings by other physicians have been discussed in detail above. Thus, little weight is given to all of Dr. Baker's opinions.

(R. at 23.)

The ALJ also assigned "little" weight to the opinions of Dr. Scott and Dr. Rakjan,

explaining as follows:

Little weight is given to the December 30, 2011 psychological evaluation [by Dr. Scott] of the claimant for purposes of workers' compensation. The examiner opined that the claimant would not be able to return to his former position of employment due to being unable to tolerate interaction with co-workers, supervisees, or supervisors, or meet the time and pace demands and the energy demands due to impaired sleep (Exhibit 35F). This opinion was made for purposes of disability under workers' compensation standards, which are different from social security disability standards, and was based largely on the claimant's subjective complaints. Other evidence discussed above showed that the claimant had only mild limitation in social functioning, which would not support a finding that he would be unable to tolerate interaction with others. Similarly, other evidence revealed that the claimant engaged in a wide range of daily activities and did not support a finding that the claimant-reported impaired sleep would preclude him from performing the time, pace, and energy demands of his former employment.

Little weight is given to the medical evaluation [by Dr. Rakjan] for purposes of the claimant's workers' compensation claim on June 11, 2014 at Exhibit 45F, which was largely based on the claimant's reported symptoms and limitations and contradicted by other evidence in the record. The claimant had reported that he does not cook or clean, has no hobbies, and does not socialize, where other evidence shows that the claimant engaged in far more extensive daily activities. The examiner opined that the claimant had reached maximum medical improvement given his regular counseling for the past four years and improvement in symptoms (no longer preoccupied with death and dying), a finding which relates to his workers' compensation claim. Furthermore, the

12

examiner opined that the claimant could not return to his past employment due to its potential to exacerbate his psychological symptoms, but could perform other work, which is solitary, sedentary, and low stress. However, these opinions are on issues reserved to the Commissioner and were made after the claimant's date last insured and based largely on subjective complaints.

(R. at 24.)

The ALJ went on to find as follows:

Great weight is given to the assessment of the State agency psychological consultant [Dr. Snyder] at Exhibit 23F, who found no severe mental impairment. Less weight is given to the assessment of the State agency psychological consultant [Dr. Meyer] at Exhibit 28F, as the evidence as a whole shows the claimant to have a nonsevere mental impairment as detailed above.

The undersigned has considered all opinion evidence and finds no other treating source opinion and no other opinions indicating that the claimant is disabled for purposes of social security disability.

(R. at 25.)

Relying on the VEs' testimony, the ALJ concluded that Plaintiff can perform past relevant work as a construction supervisor. (R. at 26.) The ALJ also found that Plaintiff can perform other jobs existing in the national economy. (*Id.*) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 27–28.)

## V.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486

F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must

"'take into account whatever in the record fairly detracts from [the] weight'" of the

Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is

substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*

*v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.

1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision

of the Commissioner will not be upheld where the SSA fails to follow its own regulations and

where that error prejudices a claimant on the merits or deprives the claimant of a substantial

right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746

(6th Cir. 2007)).

# VI.    ANALYSIS

Plaintiff advances two contentions of error.  First, Plaintiff maintains that the ALJ

improperly determined that Plaintiff had no severe mental health impairments.  Second, Plaintiff

maintains that the ALJ's opinion violates the treating source rule.  The Undersigned considers

these contentions of error in turn.

## A.      Severe Mental Health Impairments

Plaintiff contends that the ALJ erred in failing to find that he suffers from severe mental

health impairments.  Plaintiff specifically complains that the ALJ relied on outdated opinions

issued in August 2010, which only had the benefit of Dr. Baker's initial 2010 assessment.  (SOE

at 9.)  Plaintiff also insists that his mental health impairments more than minimally limit his ability to work.  (SOE at 7–10.)  Plaintiff further argues that the ALJ erred in analyzing the state agency psychological opinions.  (SOE at 10–11.)  Finally, Plaintiff argues that the case should be remanded because the ALJ violated the Appeals Council order.  (SOE at 11–12.)

Where, as here, the ALJ determines that a claimant had a severe impairment at step two of the analysis, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003).  Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity."  20 C.F .R. § 404.1545(e); *Pompa*, 73 F. App'x at 803 (rejecting the claimant's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that claimant had at least one severe impairment and considered all of the claimant's impairments in her RFC assessment); *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same).

In addition, an ALJ generally does not err in failing to specifically mention each and every one of a claimant's impairment at step four so long as the record is clear that he or she considered the impairments in developing the RFC and the RFC accounts for limitations caused by the impairments.  *Cf. Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990) ("An ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings."); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) ("[U]pon determining that a claimant has one severe impairment, the Secretary must continue with the remaining steps in

his disability evaluation[.]"); *see also Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) (finding no reversible error in the RFC determination "because the ALJ considered all of the symptoms that were consistent with the medical evidence in determining his residual functional capacity"); *McDaniel v. Astrue*, No. 1:10–cv–699, 2011 WL 5913973, *6 (S.D. Ohio Nov. 28, 2011) (finding no error where the ALJ "discussed every impairment advanced" by the plaintiff and stated that he considered the combined effects of these impairments).

Here, the Undersigned finds no reversible error in the ALJ's failure to conclude that Plaintiff suffers a severe mental health impairment. First, the ALJ found other severe impairments at step two of the sequential evaluation process, including degenerative disc disease of the spine, obesity, right shoulder impingement, and injury to the right elbow post surgeries. (R. at 16.) Second, it is clear from his decision that the ALJ specifically considered the evidence related to Plaintiff's mental health. He discussed Plaintiff's mental health at step two of the process. (R. at 16.) He specifically cited the medical sources related to Plaintiff's mental health treatment, which demonstrates that he considered it. (R. at 16–18.) In addition, the ALJ continued with the sequential analysis and considered both severe impairments as well as his non-severe mental impairment when determining Plaintiff's RFC. (R. at 19–26.) The ALJ specifically considered new evidence related to Plaintiff's mental health, including additional records from Drs. Baker, Scott, and Ranjan. (R. at 16–26.) Accordingly, to the extent that Plaintiff complains that the ALJ erred in relying on outdated opinions issued in August 2010, that argument is not well taken.

Plaintiff's contention that the ALJ erred because Plaintiff's mental health impairments more than minimally limit his ability to work is likewise unavailing. "A severe mental

impairment is 'established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a plaintiff's] statement of symptoms.'" *Griffith v. Comm'r*, 582 F. App'x 555, 559 (6th Cir. 2014) (quoting 20 C.F.R. § 416.908).  Significantly, "[n]o symptom or combination of symptoms by itself can constitute a medically determinable impairment."  SSR 96-4p, 1996 WL 374187, at *2 (July 2, 1996).  "[S]ymptoms" consist of a claimant's description of his or her alleged impairment.  20 C.F.R. § 404.1528(a).  In contrast, "signs" include "psychological abnormalities which can be observed."  20 C.F.R. § 404.1528(a)-(b).  In addition, "[p]sychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, *e.g.*, abnormalities of behavior, mood, thought, memory, orientation, development, or perception."  20 C.F.R. § 404.1528(a)-(b).  "Laboratory findings" include "psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques."  *Id*.  Consistently, the Sixth Circuit has advised that "[w]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology."  *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (internal quotation marks and citations omitted).  Plaintiff bears the burden of establishing the existence of a severe medically determinable impairment at step two.  *Griffith*, 582 F. App'x at 559.

In this case, the ALJ found that Plaintiff's mental impairment caused no more than minimal limitations in three functional areas, including activities of daily living, social functioning, and in concentration, persistence or pace.  (R. at 16–18.)[6]  The Undersigned finds that the ALJ's discussion on this issue is supported by substantial evidence.  For example, the ALJ included a lengthy and thorough discussion of the record evidence, detailing Plaintiff's

---

[6] The ALJ found no evidence of decomposition of extended duration.  (R. at 16.)

activities in 2010, 2011, and 2012.  (R. at 16–17.)  The ALJ also found that Plaintiff has reported

inconsistent symptoms as to social functioning, citing specific instances in the record where

Plaintiff complained of social isolation but also where Plaintiff reported socializing with family

and occasionally with friends and attending his son's athletic events.  (R. at 17.)  Plaintiff

reported having, and then denied having, explosive outbursts.  (*Id*.)  Treating and examining

doctors described Plaintiff as pleasant and cooperative.  (*Id*.)  Similarly, as to Plaintiff's

concentration, persistence, and pace, the ALJ noted that Plaintiff had intact memory and variable

concentration on June 10, 2010.  (*Id*.)  Although Plaintiff performed serial seven subtraction

slowly and made mistakes on June 10, 2010, his concentration and pace improved when

performing a counting task on August 26, 2010 (close to normal sustained concentration), and

improved while performing the serial seven subtraction on December 30, 2011 (good

concentration with accurate calculations at a fair speed).  (*Id*.)  Plaintiff was also capable of

identifying his problems in a written statement dated June 23, 2011.  (R. at 389.)  Plaintiff was

capable of attending administrative hearings and answered questions without difficulties.  (R.

38–49, 53–58, 61–64, 67–75, 78–89, 93–110.)  In short, the ALJ's determination that Plaintiff's

mental health impairments minimally limit Plaintiff's ability to work enjoys substantial support

in the record.  In these circumstances, even though Plaintiff goes on to point to evidence that

supports a finding that his mental health impairments more than minimally limit his ability to

work (SOE at 7–10), the Court must nevertheless defer to the ALJ's finding in this regard.  *See

Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("[I]f substantial evidence

supports the ALJ's decision, this Court defers to that finding 'even if there is substantial

evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v.

Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

18

Plaintiff next argues that the ALJ erred in analyzing the state agency psychological opinions.  (SOE at 10–11.)  As set forth above, the ALJ gave great weight to Dr. Snyder's assessment, which found no severe mental impairment, and gave less weight to Dr. Steven Meyer's assessment "as the evidence as a whole shows the claimant to have a nonsevere mental impairment as detailed above."  (R. at 25.)  Plaintiff complains that this statement does not sufficiently explain why Dr. Meyer, who had access to more of the record, deserved less weight than Dr. Snyder, who had access to less of the record.  (SOE at 10–11.)

The Undersigned disagrees.  Dr. Snyder's findings that Plaintiff had only mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace and no episodes of decompensation supported the ALJ's conclusion that Plaintiff did not have a severe mental impairment.  (R. at 629.)  Dr. Snyder gave only "partial weight" to Plaintiff's statements, which appeared to be exaggerated.  (R. at 631.)  Dr. Snyder concluded that Plaintiff did not have a severe mental impairment and therefore mental limitations in a work setting would not be severe.  (R. at 621, 631.)  In giving Dr. Snyder's opinion more weight, the ALJ explained that the "evidence as a whole" supported Dr. Snyder's findings and conclusions.  Indeed, this decision was reasonable in light of the record discussed above and the ALJ's failure to restate specific evidence in the record is not fatal to his analysis.  *See Swope v. Colvin*, No. 2:14-cv-516, 2015 WL 5626508, at *4 (S.D. Ohio Sept. 24, 2015) ("The ALJ was not required to restate the opinions of Drs. Murphy and Bline after determining to give them little weight.").  Moreover, to the extent Plaintiff complains that Dr. Snyder's opinion did not have the benefit of additional later medical records, Social Security Ruling 96-6p does not require the ALJ "to reject a state agency medical opinion merely because the claimant continues treatment after the reviewer's opinion was formed or merely because additional medical records

are generated after the reviewer's opinion is rendered." *Swope v. Comm'r of Soc. Sec.*, No. 2:14-cv-516, 2015 WL 1526723, at *9 (S.D. Ohio Apr. 2, 2015), *adopted and affirmed by Swope v. Comm'r of Soc. Sec.*, No. 2:14-cv-516, 2015 WL 5626508 (S.D. Ohio Sept. 24, 2015). Accordingly, under these circumstances where the record supports the ALJ's decision to give more weight to Dr. Snyder's opinion, the Undersigned cannot find that the ALJ erred as to his treatment of the state agency psychologists' opinions. *Id.*; *cf. Williamson v. Comm'r of Soc. Sec.*, No. 1:11–cv–828, 2013 WL 121813, at *7 (S.D. Ohio Jan. 9, 2013) ("[T]he regulations provide only that an [administrative law judge] should give more weight to an opinion that is consistent with the record as a whole.") (citing 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4)).

Finally, Plaintiff contends that the ALJ did not comply with directive from the Appeals Council to "[o]btain evidence from a medical expert to clarify the nature and severity of claimant's impairment." (SOE at 11; Reply at 3; R. at 150.) According to Plaintiff, the ALJ disregarded the directive, relied on outdated opinions, and that the failure to properly classify Plaintiff's mental health impairments was not merely harmless error. (SOE at 11.) To the extent Plaintiff suggests that the Court remand for failure to comply with the Appeals Council's Order, that argument is not well taken. Federal courts, including those within the Sixth Circuit, disagree "'whether an ALJ's failure to follow Appeals Council directives in a remand order may serve as independent grounds for reversal absent other error.'" *Coleman v. Berryhill*, No. 1:16CV00931, 2017 WL 1208760, at *16 (N.D. Ohio Feb. 17, 2017) (quoting *Godbey v. Colvin*, No. 1:13CV–00167–HBB, 2014 WL 4437647, at *5 (W.D. Ky. Sept. 9, 2014), *adopted by Coleman v. Berryhill*, No. 1:16CV00931, 2017 WL 1199086 (N.D. Ohio Mar. 31, 2017)). "'The overwhelming majority of courts in this circuit, however, have determined that federal courts lack jurisdiction to consider whether an administrative law judge complied with the Appeals

Council's instructions on remand.'" *Id.* (quoting *Shope*, 2015 WL 3823165 at * 8). As this

Court has previously explained:

> When the Appeals Council denies a claimant's request for review, the decision of the administrative law judge becomes the final decision of the Commissioner. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (citing 20 C.F.R. § 404.955). Under such circumstances, a court called upon to review the final decision of the Commissioner of Social Security is confined to a review of the administrative law judge's decision and the evidence presented to the administrative law judge. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) (citing *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992)). "Whether an ALJ complies with an Appeals Council order of remand is an internal agency matter which arises prior to the issuance of the agency's final decision." *Brown*, 2009 WL 465708 at *6. The Appeals Council had an opportunity to review the administrative law judge's compliance with its directives, and it did not remand the matter a second time. This Court has no authority to review the decision of the Appeals Council, *see Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996), and "Section 405(g) does not provide this court with authority to review intermediate agency decisions that occur during the administrative review process." *Brown*, 2009 WL 465708 at *6.

*Shope*, 2015 WL 3823165, at *9. The Undersigned agrees with the above reasoning and finds

that the Court lacks jurisdiction to consider whether the ALJ complied with the Appeals

Council's directive. *Id.*

In sum, the Undersigned finds no error with the ALJ's determination that Plaintiff did not

suffer from severe mental impairments. It is therefore **RECOMMENDED** that Plaintiff's first

contention of error be **OVERRULED**.

**B.      Evaluation of Treating Psychologist's Opinions**

Plaintiff next contends that the ALJ committed reversible error in failing to properly

weigh the opinion of the treating psychologist, Dr. Baker. The Undersigned concludes that

substantial evidence supports the ALJ's decision and therefore finds Plaintiff's second

contention of error to be without merit.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(d). The applicable regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 416.927(d)(2); *Blakley*, 581 F.3d at 408. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.*

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(d)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make

clear to any subsequent reviewers the weight the adjudicator gave to the treating source's

medical opinion and the reasons for that weight."  *Friend v. Comm'r of Soc. Sec.*, No. 09-3889,

2010 WL 1725066, at *7 (6th Cir. 2010) (internal quotation omitted).  The United States Court

of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the
> disposition of their cases," particularly in situations where a claimant knows that
> his physician has deemed him disabled and therefore "might be especially
> bewildered when told by an administrative bureaucracy that she is not, unless
> some reason for the agency's decision is supplied."  *Snell v. Apfel*, 177 F.3d 128,
> 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating
> physician rule and permits meaningful review of the ALJ's application of the rule.
> *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45.  Thus, the reason-giving requirement is "particularly important

when the treating physician has diagnosed the claimant as disabled."  *Germany-Johnson v.*

*Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

Finally, the Commissioner reserves the power to decide certain issues, such as a

claimant's residual functional capacity.  20 C.F.R. § 404.1527(e).  Although the ALJ will

consider opinions of treating physicians "on the nature and severity of your impairment(s),"

opinions on issues reserved to the Commissioner are generally not entitled to special

significance.  20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Here, the ALJ did not err in according little weight to the opinion of Plaintiff's treating

psychologist, Dr. Baker.  Plaintiff complains that the ALJ failed to give good reasons for giving

little weight to Dr. Baker's opinion, taking issue with the ALJ's criticism that Dr. Baker's

opinions were primarily made for the purpose of Plaintiff's workers' compensation claim; that

Dr. Baker opined that Plaintiff is disabled, which is an issue reserved for the Commissioner; and

that Dr. Baker relied largely on Plaintiff's subjective reports, which the ALJ stated were

contradicted by other evaluations and testing.  (SOE at 14–15; Reply at 3–7.)  However,

substantial evidence supports the ALJ's decision where Plaintiff's subjective reports conflict with other evidence in the record. For example, as discussed above, the ALJ noted that Plaintiff reported inconsistent symptoms as to social functioning, including where Plaintiff complained of social isolation to Dr. Baker in June 2010 (R. at 17, 597), but then Plaintiff reported to Dr. Meyer in August 2010, that he socializes with family every day and "once in a while" with other people. (R. at 610.) In December 2011 and in February 2012, Plaintiff reported that he attended his son's athletic events. (R. at 107, 949.) Plaintiff complained that he used to be good at math and struggled to do serial seven subtraction for Dr. Baker in June 2010 (R. at 17, 974), but in December 2011, Plaintiff improved while performing the serial seven subtraction, achieving accurate calculations at a fair speed. (R. at 17, 952.) Plaintiff reported to Dr. Baker that he had difficulty concentrating in June 2010. (R. at 17, 597.) However, at other times Plaintiff reported sustaining concentration sufficient to drive up to twenty minutes, to watch a thirty-minute television show, and to count backwards from thirty by threes without errors. (R. at 17, 939, 949.) Similarly, Dr. Meyer noted in August 2010, that Plaintiff reported concerns with the ability to remember and concentration, but concluded that these problems were not evidenced in the mental status testing. (R. at 17, 612, 615.) As previously noted, Plaintiff was also capable of identifying his problems in a written statement dated June 23, 2011, and was capable of attending administrative hearings and answered questions without difficulties. (R. 317, 8–49, 53–58, 61–64, 67–75, 78–89, 93–110, 389.) Moreover, while Plaintiff reported to Dr. Baker in June 1010, that he spent most of his time in a recliner or bathtub (R. at 596), Plaintiff remained capable of performing many daily activities, including attending his son's football games, socializing daily with family, performing housework twice per week, watching half-hour long television programs, feeding his dogs, taking care of his personal needs, mowing at times,

picking up his son from school, grocery shopping with his wife, opening mail, and performing other activities. (R. at 16–17, 107, 336–43, 610, 937, 949.) *See* 20 C.F.R. § 404.1529(c)(3)(i) (daily activities may be useful to assess nature and severity of claimant's symptoms); *cf. Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered [the claimant's] ability to conduct daily life activities in the face of his claim of disabling pain."). In addition, examiners other than Dr. Baker noted that Plaintiff was dramatic or exaggerated his symptoms or may be malingering. (R. at 18, 21–22, 611, 631, 943.) All of this evidence demonstrates that the ALJ considered the entire record and was justified in giving Dr. Baker's opinion little weight because it is inconsistent with other substantial evidence. *Price v. Comm'r of Soc. Sec*., 342 F. App'x 172, 175-76 (6th Cir. 2009) ("Where the opinion of a treating physician is not supported by objective evidence or is inconsistent with the other medical evidence in the record, the Court generally will uphold an ALJ's decision to discount that opinion.").

Plaintiff's contrary argument on this issue does not militate a different result. While Plaintiff insists that the ALJ failed to give even one "good reason" and that other evidence demonstrates a severe mental impairment (Reply at 3–7), the Undersigned has already found for the reasons discussed above that substantial evidence supports the ALJ's decision. The Court must defer to that decision when it is supported by substantial evidence "'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakely*, 581 F.3d at 406.

In sum, the Undersigned concludes that the ALJ did not violate the treating physician rule or otherwise err in his assessment of Dr. Baker's opinions and that his decision is supported by

substantial evidence.  It is therefore **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

## VII.    CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VIII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d

981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED.**


Date:  July 25, 2017                                      s/ *Elizabeth A. Preston Deavers*  _____
                                                         ELIZABETH A. PRESTON DEAVERS
                                                         UNITED STATES MAGISTRATE JUDGE